[No. S133794. Jan. 25, 2007.]

PIONEER ELECTRONICS (USA), INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PATRICK OLMSTEAD, Real Party in Interest.

COUNSEL

Hughes Hubbard & Reed, William T. Bisset, Charles Avrith, David A. Lombardero and Alicia D. Mew for Petitioner.

Sidley Austin, Jeffrey A. Berman, James M. Harris and Steven A. Ellis for Employers Group as Amicus Curiae on behalf of Petitioner.

Jocelyn D. Larkin, Brad Seligman and Sarah Varela for Asian Law Caucus, Disability Rights Advocates, Disability Rights and Education Defense Fund, Equal Justice Society, Equal Rights Advocates, The Impact Fund, Legal Aid Society-Employment Law Center, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, Mexican American Legal Defense and Educational Fund, Public Counsel and Western Center on Law and Poverty as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Lange & Koncius, Joseph J. M. Lange, Jeffrey A. Koncius; Milberg Weiss Bershad & Schulman, Sanford P. Dumain, Michael R. Reese, Ann M. Lipton, Jeff S. Westerman, Sabrina S. Kim; Robert I. Lax & Associates and Robert I. Lax for Real Party in Interest.

The Sturdevant Law Firm, James C. Sturdevant, Mark T. Johnson and Sylvia Sokol for Consumer Attorneys of California as Amicus Curiae on behalf of Real Party in Interest.

David R. Labahn for California District Attorneys Association as Amicus Curiae on behalf of Real Party in Interest.

OPINION

**CHIN, J.**—Purchasers of possibly defective DVD players communicated with the seller, expressing their discontent and relating their identifying information (names, addresses, etc.). We consider here the extent to which California's right to privacy provision (Cal. Const., art. I, § 1) protects these purchasers from having their identifying information disclosed to plaintiff during civil discovery proceedings in a consumers' rights class action against the seller. The named plaintiff in the action assertedly needs this information from the seller to facilitate communication with potential class members. We focus on the requisite notice and opportunity to assert a privacy right that should accompany a precertification communication to members of the putative class before such disclosure may occur.

The Court of Appeal ruled that trial courts in such cases must assure not only that all prospective or potential class members receive actual notice of their right to grant or withhold consent to the release of their personal identifying information, but also that such consent must be exhibited by each potential class member's own positive act of agreeing to disclosure, rather than by the mere passive failure to object. Because this ruling is overprotective of the purchasers' privacy rights, inconsistent with established privacy principles, and likely to cause adverse consequences in future cases, we will reverse.

## I. FACTS

The following uncontradicted facts were taken largely from the Court of Appeal's opinion in this case. Patrick Olmstead purchased a DVD player from Pioneer Electronics (USA), Inc. (Pioneer). Claiming it was defective, he brought suit against Pioneer on his own behalf and on behalf of a putative class of persons who purchased the same model of allegedly defective DVD player. Responding to a discovery request by Olmstead (see Code Civ. Proc., § 2017.010), Pioneer produced redacted documents relating to complaints it received from approximately 700 to 800 consumers regarding the DVD players. Olmstead, seeking further identifying information about these persons, moved to compel Pioneer to provide unredacted copies of any consumer complaints it had received about the allegedly defective DVD players. The motion also asked Pioneer to disclose the names and contact information (addresses and telephone numbers) of each complainant. Pioneer refused to comply, citing the state's privacy provision (Cal. Const., art. I, § 1) and asserting a right of privacy on behalf of these persons.

At a March 2004 hearing, the trial court acknowledged that disclosure of the information sought was indeed affected by the privacy provision, stating that "the names are probably protected unless there's a *Colonial Life* letter that goes out." (The court was referring to this court's decision in *Colonial Life & Accident Ins. Co. v. Superior Court* (1982) 31 Cal.3d 785, 787–790 [183 Cal.Rptr. 810, 647 P.2d 86], upholding a trial court order allowing disclosure by an insurer of the names and addresses of certain previously insured claimants to the plaintiff in a bad faith settlement action, if those earlier claimants specifically authorized disclosure by signing and dating an enclosed form so stating.) The court in the present case ordered Pioneer "to write a '*Colonial [Life]*' letter and then reveal the names of those consumers who do not object."

The court's decision was refined in an order drafted later that month. In it, the court stated that it "is in receipt of two versions of a '*Colonial Life*' letter to customers" and that "[t]he major difference is whether or not an affirmative

response should be required. In order for the letter to have any meaning, it should require an affirmative response, as did the letter in the *Colonial Life* case." The court then authorized the following text:

"Dear Consumer: [¶] In August, 2001, litigation was filed in California in which the plaintiff alleges that Pioneer DVD Players are not compatible with the DVD Video Standard and as such, are incapable of playing all DVD discs. As part of the litigation, Pioneer was required to provide the plaintiff's counsel with a copy of the record that it made of information or complaints you provided some time ago when you contacted Pioneer's customer service department about your Pioneer DVD Player. Before doing so, however, Pioneer removed all identifying information regarding your name, address and telephone number. The court has now directed that Pioneer send you this notice so that you can decide whether to authorize Pioneer to disclose your personal information to the plaintiff's counsel so they may contact you.

"If you agree to the disclosure of this information to the plaintiff's counsel, please check the box on the enclosed form and return it to the address shown on the form. *Not responding to this letter will be treated as declining contact from Plaintiff's counsel.*" (Italics added.) In other words, the trial court's initial order, as refined above, contemplated that disclosure of the identifying information would be improper in the absence of an affirmative response by the Pioneer customer affected. Plaintiff Olmstead, believing this order too restrictive, moved for reconsideration and clarification. In April 2004, the court vacated its March order and adopted plaintiff's new proposed language for the letter to Pioneer's customers.

This new letter stated that, "If you do not agree to the disclosure of this information to the plaintiff's counsel, please check the box on the enclosed form and return it to the address shown on the form. *Not responding to this letter will be treated as agreeing to contact by Plaintiff's counsel.*" (Italics added.) The effect of these changes was to state that customer identifying information *would* be released *unless* the addressed consumer objected. As the trial court stated, "It seems to me that this information, just the names, addresses and contact information is not particularly sensitive. It's not medical information. It's not personal finances. It's merely the name, and if the people don't want to be contacted, they can say so."

The trial court stayed its April order pending writ review by the Court of Appeal, which granted Pioneer's petition for writ of mandate, and issued the writ vacating the trial court's order. We will reverse.

## II. *DISCUSSION*

Does a complaining purchaser possess a right to privacy protecting him or her from unsolicited contact by a class action plaintiff seeking relief from the

vendor to whom the purchaser's complaint was sent? As noted, in the order now under review, the trial court ordered defendant Pioneer to inform the approximately 700 to 800 complaining Pioneer customers, by letter, about the lawsuit, plaintiff Olmstead's request for identifying information in order to contact them, and their right to object to release of that information. The letter also would have informed them that their failure to respond would be treated as consent to release of the information.

Pioneer argues, and the Court of Appeal held, that the court should have gone further and ordered that Pioneer make no such disclosure of the identifying information to plaintiff without the affirmative consent of Pioneer's former customers. As noted, the Court of Appeal concluded that protecting disclosure of an individual's name and other identifying information is a matter embraced within the state Constitution's privacy provision (Cal. Const., art. I, § 1), that adequate steps to assure actual notice is a prerequisite to an assumed waiver of a customer's right of privacy, and that the measures ordered in this case were inadequate. As will appear, we believe that under the circumstances in this case, the trial court's order was sufficient and involved no serious breach of privacy.

Initially, we note that we are dealing with a proposed *precertification* notice to prospective class members. Although the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) expressly authorizes postcertification notices in class actions (see *id.,* § 1781, subds. (d), (e)), no comparable provision exists for precertification notices. In *Atari, Inc. v. Superior Court* (1985) 166 Cal.App.3d 867 [212 Cal.Rptr. 773], the court found "no persuasive objection to use of this kind of *precertification* communication by class-action plaintiffs to potential class members where, as here, the trial court has been given the opportunity in advance to assure itself that there is no specific impropriety." (*Id.* at p. 871; see also *Howard Gunty Profit Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 580 [105 Cal.Rptr.2d 896]; cf. *Parris v. Superior Court* (2003) 109 Cal.App.4th 285, 290, 292–293, 295–300 [135 Cal.Rptr.2d 90].)

A. *Court of Appeal Decision*

The Court of Appeal in this case assumed that Pioneer's former customers had a constitutional privacy right to object to Pioneer disclosing their identifying information to plaintiff Olmstead, and further ruled that without an affirmative letter of consent, no waiver of that right would occur. The Court of Appeal reasoned, "[a] consumer cannot be deemed to have intended to waive his or her right of privacy unless and until the consumer has notice of the need and opportunity to assert it. Here, the challenged order does not adequately assure that the consumer will receive actual notice. Absent notice,

the consumer is unaware of the need to assert his or her privacy interest and is thereby deprived of a meaningful opportunity to do so. Absent an affirmative response from the consumer, there is no adequate basis to infer that the consumer has consented to the release of personal information. [¶] We shall order, on remand, that the trial court fashion an order that provides reasonable assurance that the consumers receive actual notice of the right to grant or withhold consent to release of personal information, and that such information not be released as to any consumer unless that consumer affirmatively agrees to such release."

On the other hand, plaintiff Olmstead reasons that consumers who initially contacted Pioneer to express dissatisfaction with its product have a reduced expectation of privacy or confidentiality in the contact information they freely offered to Pioneer for the purpose, presumably, of allowing further communication regarding their complaints. Plaintiff contends that, after balancing all the interests involved, the trial court's order requiring notice to Pioneer's customers and giving them the opportunity to object to transmission of their identifying information adequately protected their privacy interests. As will appear, we agree.

In reaching its decision, the Court of Appeal relied in part on ballot arguments leading to the adoption of the privacy provision of the state Constitution in 1972. These arguments explained that the right of privacy could be defined as the "right to be left alone," and observed that "the right to be left alone . . . is a fundamental and compelling interest. . . . It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us." (Ballot Pamp., Gen. Elec. (Nov. 7, 1972), argument in favor of Prop. 11, p. 27; see *Hill v. Colorado* (2000) 530 U.S. 703, 716 [147 L.Ed.2d 597, 120 S.Ct. 2480] [privacy right to be free in one's home from unwanted communication]; see also *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 81 [26 Cal.Rptr.2d 834, 865 P.2d 633] (dis. opn. of Mosk, J.) (*Hill*).)

The Court of Appeal also cited the Information Practices Act of 1977 (Civ. Code, § 1798 et seq.), an act that contains legislative findings that "(a) The right to privacy is being threatened by the indiscriminate collection, maintenance, and dissemination of personal information and the lack of effective laws and legal remedies[;] [¶] (b) The increasing use of computers and other sophisticated information technology has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information[; and] [¶] (c) In order to protect the privacy of individuals, it is necessary that the maintenance and dissemination of personal information be subject to strict limits." (Civ. Code, § 1798.1.)

The Court of Appeal relied in part on a case upholding the right of householders not to receive advertising and solicitations by mail (*Rowan v. Post Office Dept.* (1970) 397 U.S. 728, 737 [25 L.Ed.2d 736, 90 S.Ct. 1484]), but that case held that a householder may circumscribe the right of a mailer to communicate with him "by an affirmative act of . . . giving notice that he wishes no further mailings from that mailer." (*Ibid.*; see *Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347, 357–359 [99 Cal.Rptr.2d 627] [disclosure of names, addresses, and telephone numbers of association members for contact purposes implicates privacy interest in sanctity of home].) In other words, in *Rowan* the supposed privacy infringement would continue unless the householder requested otherwise. This is consistent with the trial court's order in the present case, which required the consumer to notify Pioneer of his or her objection to disclosure.

As the Court of Appeal observed, Pioneer, as custodian of the relevant documents, has standing to assert the privacy interests of its customers in the identifying information they gave to Pioneer. (See *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 658 [125 Cal.Rptr. 553, 542 P.2d 977] (*Valley Bank*).) But *Valley Bank* also supports the trial court's order here, placing the burden of making a privacy objection on the customer.

In that case, a bank sued the real parties in interest for the balance due on a promissory note. The real parties in interest asserted a fraud defense and sought discovery of certain banking records of various bank customers. The bank requested a protective order on behalf of these known individuals and entities. (Code Civ. Proc., § 2019, subd. (b)(1).) The trial court ordered disclosure of the information subject to limitations as to time and particular financial transactions. (*Valley Bank, supra*, 15 Cal.3d at pp. 654–655.)

We pointed out in *Valley Bank* that, unlike the attorney-client or physician-patient privilege, there is "no bank-customer privilege," and that under "existing law, when bank customer information is sought, the bank has no obligation to notify the customer of the proceedings, and disclosure freely takes place unless the bank chooses to protect the customer's interests and elects to seek a protective order on his behalf." (*Valley Bank, supra*, 15 Cal.3d at pp. 656, 657.) Nonetheless, we concluded the state's privacy provision "extends to one's confidential financial affairs as well as to the details of one's personal life" (*id.* at p. 656), and we stated that " '[a] bank customer's reasonable expectation is that, *absent compulsion by legal process,* the matters he reveals to the bank will be utilized by the bank only for internal banking purposes.' " (*Id.* at p. 657, quoting *Burrows v. Superior Court* (1974) 13 Cal.3d 238, 243 [118 Cal.Rptr. 166, 529 P.2d 590].)

To protect a bank customer's privacy rights, we employed a balancing test, "[s]triking a balance between the competing considerations, . . . before

confidential customer information may be disclosed in the course of civil discovery proceedings, the bank must take reasonable steps to notify its customer of the pendency and nature of the proceedings *and to afford the customer a fair opportunity to assert his [or her] interests by objecting to disclosure,* by seeking an appropriate protective order, or by instituting other legal proceedings to limit the scope or nature of the matters sought to be discovered." (*Valley Bank, supra,* 15 Cal.3d at p. 658, italics added; see also *Olympic Club v. Superior Court* (1991) 229 Cal.App.3d 358, 361, 365 [282 Cal.Rptr. 1] [applying *Valley Bank* approach to "associational privacy interests"].)

Thus, although *Valley Bank* acknowledged the bank's obligation to *notify* bank customers of their option to seek legal relief before the bank released confidential customer information, we did not require the bank to obtain an affirmative consent from those customers before allowing such information to be released. The Court of Appeal below deemed the *Valley Bank* approach "inadequate when applied to a mass mailing to persons whose identities are not known by the party seeking discovery. The proposed mailing in this case would be to some 700 to 800 consumers. [¶] Unless reasonable measures are taken to assure actual notice to these consumers, they will not be afforded a reasonable opportunity to object."

The Court of Appeal thus preferred an approach which would place the burden on the discovery proponent to obtain written authorization from each person whose privacy was to be invaded. In support, the court cited *Colonial Life & Accident Ins. Co. v. Superior Court, supra,* 31 Cal.3d 785, which allowed disclosure to the plaintiff in a bad faith insurance action of the names and addresses of third parties filing similar claims against that insurer only if those parties specifically authorized the release of such information by signing and dating an enclosed form that so stated. The *Colonial Life* approach, however, was mandated by the express provisions of the Insurance Information and Privacy Protection Act (Ins. Code, § 791 et seq.), preventing an insurer from disclosing personal information obtained about a person during an insurance transaction *without the person's written authorization* (*id.,* § 791.13).

The Court of Appeal in the present case opined that because no "ongoing business relationship" existed between Pioneer and its complaining DVD player customers, it was unlikely they could be expected to open a letter from Pioneer and obtain actual notice of the "impending impingement upon their privacy and the opportunity to assert their privacy rights." The court also noted that no safeguards existed "to warn the consumers not to simply throw away unopened Pioneer's letters as junk mail, or against the prospect that the mail simply is not delivered." The court concluded that "[w]aiver [of the

customers' privacy rights] must depend on an affirmative manifestation of consent by the consumer, whether by written correspondence, e-mail, facsimile, or other writing. [¶] The requirement of actual notification and an affirmative reply as requisites to disclosure of personal identifying information is not burdensome. But [it is] essential to protection of the privacy interests safeguarded by the right to privacy."

As will appear, the Court of Appeal's approach was too strict and failed to consider the nature of the privacy invasion involved here and apply a balancing test that weighs the various competing interests, as outlined in our case law.

### B. *The* Hill *Decision and Its Balancing Test*

■ Notwithstanding the broad descriptions of the privacy right in the ballot arguments and legislative findings relied on by the Court of Appeal, we have explained that the right of privacy protects the individual's *reasonable* expectation of privacy against a *serious* invasion. (*Hill, supra,* 7 Cal.4th at pp. 36–37.) *Hill* observed that whether a legally recognized privacy interest exists is a question of law, and whether the circumstances give rise to a reasonable expectation of privacy and a serious invasion thereof are mixed questions of law and fact. (*Hill, supra,* 7 Cal.4th at p. 40.) "If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." (*Ibid.*)

■ *Hill* sets forth in detail the analytical framework for assessing claims of invasion of privacy under the state Constitution. First, the claimant must possess a "legally protected privacy interest." (*Hill, supra,* 7 Cal.4th at p. 35.) An apt example from *Hill* is an interest "in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy') . . . ." (*Id.* at p. 35.) Under *Hill,* this class of information is deemed private "when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." (*Ibid.*) Additionally, *Hill* recognized the interest "in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." (*Ibid.*) As with claims of informational privacy, we must examine whether established social norms protect a person's private decisions or activities from "public or private intervention." (*Id.* at p. 36.)

■ Second, *Hill* teaches that the privacy claimant must possess a reasonable expectation of privacy under the particular circumstances, including "customs, practices, and physical settings surrounding particular activities . . . ." (*Hill, supra,* 7 Cal.4th at p. 36.) As *Hill* explains, "A 'reasonable'

expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." (*Id.* at p. 37.) "[O]pportunities to consent voluntarily to activities impacting privacy interests obviously affect[] the expectations of the participant." (*Ibid.*)

■ Third, *Hill* explains that the invasion of privacy complained of must be "serious" in nature, scope, and actual or potential impact to constitute an "egregious" breach of social norms, for trivial invasions afford no cause of action. (*Hill, supra,* 7 Cal.4th at p. 37.)

■ Assuming that a claimant has met the foregoing *Hill* criteria for invasion of a privacy interest, that interest must be measured against other competing or countervailing interests in a " 'balancing test.' " (*Hill, supra,* 7 Cal.4th at p. 37; see *Parris v. Superior Court, supra,* 109 Cal.App.4th at pp. 300–301 [balancing privacy rights of putative class members against discovery rights of civil litigants]; see also *Britt v. Superior Court* (1978) 20 Cal.3d 844, 855–856 [143 Cal.Rptr. 695, 574 P.2d 766] [balancing right of associational privacy with discovery rights of litigants]; *Valley Bank, supra,* 15 Cal.3d at p. 657 [balancing test in bank customer privacy case]; *Planned Parenthood Golden Gate v. Superior Court, supra,* 83 Cal.App.3d at pp. 358–369 [balancing associational privacy rights].) "Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate and important competing interests." (*Hill, supra,* 7 Cal.4th at p. 38.) Protective measures, safeguards and other alternatives may minimize the privacy intrusion. "For example, if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged." (*Ibid.*)

## C. *Trial Court's Order Involved No Abuse of Discretion*

Under our decision in *Valley Bank,* trial courts are vested with discretion in considering "[t]he variances of time, place, and circumstance" under which bank customer identifying information may be divulged to third parties. (*Valley Bank, supra,* 15 Cal.3d at p. 658.) Similarly, in applying the *Hill* balancing test, trial courts necessarily have broad discretion to weigh and balance the competing interests. (*Hill, supra,* 7 Cal.4th at pp. 37–38.) Did the trial court abuse its discretion here?

The record shows that the trial court, reconsidering its earlier order requiring receipt of an affirmative authorization from Pioneer customers before disclosure could occur, carefully balanced the competing interests and expressly found "that there are minimal privacy interests involved here. Revealing names, addresses and contact information on persons who have already complained about their Pioneer DVD players would not be particularly sensitive or intrusive. The proposed letter which the Court now adopts

does allow anyone who does not wish to be bothered to say so, and they will not be contacted." As we explain, we find no abuse of discretion.

**1. Reduced expectation of privacy**—The trial court recognized that the personal identifying information at issue here was probably entitled to some privacy protection, and the court ultimately required notice to each affected Pioneer customer of the proposed disclosure and a chance to object to it. Did these customers have a reasonable expectation that the information would be kept private *unless they affirmatively consented*? We think not.

Pioneer's complaining customers might reasonably expect to be notified of, and given an opportunity to object to, the release of their identifying information to third persons. Yet it seems unlikely that these customers, having already voluntarily disclosed their identifying information to that company in the hope of obtaining some form of relief, would have a reasonable expectation that such information would be kept private and withheld from a class action plaintiff who possibly seeks similar relief for other Pioneer customers, *unless the customer expressly consented to such disclosure*. If anything, these complainants might reasonably expect, and even hope, that their names and addresses would be given to any such class action plaintiff.

**2. No serious invasion of privacy**—Second, for much the same reasons that Pioneer customers had a reduced expectation of privacy, the trial court could properly find that no serious invasion of privacy would ensue if release of complaining customer identifying information was limited to the named plaintiff in a class action filed against Pioneer, following written notice to each customer that afforded a chance to object. As the trial court stated, the proposed disclosure was not "particularly sensitive," as it involved disclosing neither one's personal medical history or current medical condition nor details regarding one's personal finances or other financial information, but merely called for disclosure of contact information already voluntarily disclosed to Pioneer.

As previously noted, under *Hill, supra*, 7 Cal.4th at page 35, protectable privacy interests generally fall into two categories: "informational privacy," protecting the dissemination and misuse of sensitive and confidential information, and "autonomy privacy," preventing interference with one's personal activities and decisions. The limited disclosure to plaintiff of mere contact information regarding possible class action members would not appear to unduly interfere with either form of privacy, given that the affected persons readily may submit objections if they choose. Pioneer has never suggested that plaintiff threatens to engage in any abusive conduct, or otherwise misuse the information it sought.

■ Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case. (E.g., *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 820–821, 836 [97 Cal.Rptr.2d 226]; *Budget Finance Plan v. Superior Court* (1973) 34 Cal.App.3d 794, 799–800 [110 Cal.Rptr. 302]; see Code Civ. Proc., § 2017.010.) Such disclosure involves no revelation of personal or business secrets, intimate activities, or similar private information, and threatens no undue intrusion into one's personal life, such as mass-marketing efforts or unsolicited sales pitches. Moreover, the order in this case imposed important limitations, requiring written notice of the proposed disclosure to all complaining Pioneer customers, giving them the opportunity to object to the release of their own personal identifying information. Under these circumstances, the court's order involved no serious invasion of privacy.

The Court of Appeal expressed the concern that the notice letters to be sent to Pioneer's complaining customers might never be delivered and read. We believe this concern is misplaced, assuming the notice clearly and conspicuously explains how each customer might register an objection to disclosure. In *Valley Bank*, rather than insist on absolute certainty of delivery, we held instead that "reasonable steps" should be taken to notify bank customers of the disclosure of their identifying information. (*Valley Bank, supra*, 15 Cal.3d at p. 658.) Ordinary mailed notice is deemed a reasonable notification procedure in a variety of contexts, including service of process and legal notices (Code Civ. Proc., §§ 1012–1013), service of subpoenas duces tecum (*id.*, § 1985.3, subd. (b)), service of class action notices (*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 812–813 [86 L.Ed.2d 628, 105 S.Ct. 2965]), and service of jury summonses (Code Civ. Proc., § 208). A faxed or e-mailed notice might be reasonable and appropriate where the complaining customer had originally contacted Pioneer by those means.

**3. Balancing opposing interests**—Pioneer's failure to demonstrate that its customers entertained a reasonable expectation of privacy, or would suffer a serious invasion of their privacy, could end our inquiry as these elements are essential to any breach of privacy cause of action under *Hill* before any balancing of interests is necessary. (See *Hill, supra*, 7 Cal.4th at pp. 39–40.) But a brief examination of the respective interests involved here helps reinforce our conclusion that the trial court's order was not an abuse of discretion.

■ The court could reasonably conclude that, on balance, plaintiff's interest in obtaining contact information regarding complaining Pioneer customers outweighed the possibility that some of these customers might fail to receive their notice and thus lose the opportunity to object to disclosure.

Our discovery statute recognizes that "the identity and location of persons having [discoverable] knowledge" are proper subjects of civil discovery. (Code Civ. Proc., § 2017.010; see Judicial Council of Cal. Form Interrogatories Nos. 12.1–12.7.) In a real sense, many of Pioneer's complaining customers would be *percipient witnesses* to relevant defects in the DVD players.

From the standpoint of fairness to the litigants in prosecuting or defending the forthcoming class action, Pioneer would possess a significant advantage if it could retain for its own exclusive use and benefit the contact information of those customers who complained regarding its product. Were plaintiff also able to contact these customers and learn of their experiences, he could improve his chances of marshalling a successful class action against Pioneer, thus perhaps ultimately benefiting some, if not all, those customers. It makes little sense to make it *more* difficult for plaintiff to contact them by insisting they first affirmatively contact Pioneer as a condition to releasing the same contact information they already divulged long ago.

Additionally, adoption of the Court of Appeal's constitutionally based rule requiring an affirmative waiver from persons whose personal identifying information is sought by others could have potentially adverse effects in cases brought to redress a variety of social ills, including consumer rights litigation. For example, Code of Civil Procedure section 1985.3 permits discovery of a consumer's records held by record holders (e.g., banks, lending institutions, utilities) if the consumer is given prior notice and an opportunity to object or seek a protective order. (Code Civ. Proc., § 1985.3, subds. (b), (e).) Amicus curiae California District Attorneys Association observes that the Court of Appeal's privacy rule could override this and similar statutory provisions and restrict law enforcement efforts in investigating and prosecuting "consumer and investor fraud, elder financial abuse schemes, food and drug hazards, and breaches of consumer product warranty, health, and safety standards," until written consents appear from affected persons whose identifying information is sought.

Similarly, amicus curiae Consumer Attorneys of California notes that the Court of Appeal's ruling, by preventing or substantially delaying identification of witnesses and potential class members, could make it more difficult to obtain class certification, thereby reducing the effectiveness of class actions as a means to provide relief in consumer protection cases.

D. *Conclusion*

For all the foregoing reasons, we think the trial court properly evaluated the alternatives, balanced the competing interests, and permitted disclosure of contact information regarding Pioneer's complaining customers

unless, following proper notice to them, they registered a written objection. These customers had no reasonable expectation of any greater degree of privacy, and no serious invasion of their privacy interests would be threatened by requiring them affirmatively to object to disclosure.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed and the cause remanded to that court for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.